UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINSVILLE DIVISION

| | | |
|---|---|---|
| Soluciones en Bastones S.A. de C.V., | : : : | Case No.   2:22-cv-00248-RWS |
| | : | **JURY TRIAL DEMANDED** |
| Plaintiff, | : : | |
| v. | : : | |
| Studebaker Defense Group, LLC and Glenn Hill, | : : : | |
| Defendant. | : | |

## COMPLAINT FOR DAMAGES

Plaintiff Soluciones en Bastones S.A. de C.V. ("Soluciones") files this Complaint for Damages against Defendant Studebaker Defense Group, LLC ("Studebaker") and Glenn Hill ("Hill" and, together with Soluciones and Studebaker, "the Parties") and shows this Honorable Court as follows:

## NATURE OF ACTION

1.     This lawsuit arises out of Studebaker's improper refusal to refund more than $1.5 million that Soluciones paid—pursuant to an agreement between the Parties—for certain N95 face masks that Studebaker never delivered.

2.     Per the Parties' agreement, Studebaker was to deliver the subject masks

1

within 10 to 14 days of receiving the payment. Although Soluciones paid Studebaker more than two and a half years ago, it has never received the masks.

3.      Once it became apparent that Studebaker was not going to deliver the subject masks in accordance with the Parties' agreement or otherwise within a commercially reasonable time, Soluciones formally notified Studebaker of the breach, and gave it a reasonable time to cure. Studebaker failed to cure its breach.

4.      Soluciones then attempted to cancel its order and obtain a refund. But Studebaker refused to refund Soluciones' $1.5 million payment.

5.      Because it was apparently experiencing other financial stressors, Studebaker could not afford to refund the $1.5 million to Soluciones. Nor was Studebaker in a position to deliver the face masks to Soluciones.

6.      Instead of disclosing this reality to Soluciones, Studebaker acted deceptively and intentionally sought to string Soluciones along and convince Soluciones that Studebaker would either deliver the masks as promised or provide a refund, even though it had no intention to do either. Studebaker, by way of its Chief Executive Officer Glenn Hill, made several misrepresentations to that end, upon which Soluciones reasonably relied.

7.      Given Mr. Hill's representations and false reassurances, Soluciones did

2

not seek to immediately enforce its rights under the Parties' agreement. In good faith, Soluciones continued to wait for Studebaker to act in accordance with its representations, believing that Studebaker was also acting honestly and in good faith.

8.     As a result, for nearly two and a half years, Soluciones lost the opportunity to use and invest its money. Soluciones suffered additional damages due to the forgone capital, including the loss of lucrative business opportunities and loss of goodwill with its customers.

9.     Soluciones brings this action for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, conversion, fraud, and negligent misrepresentation. This action seeks compensatory, consequential, and punitive damages, as well as contractual and statutory attorney's fees, and other appropriate relief as further detailed herein.

## **PARTIES**

10.     Soluciones is a Mexican corporation with its principal business address at Boulevard Isidro Fabela no. 1100 Col. Tlacopa, Toluca, Mexico, C.P. 50010.

11.     Soluciones is led and managed by its President, Jose Pablo Salgado.

12.     Soluciones is a citizen of a foreign state, Mexico.

13.     Studebaker is a Delaware limited liability corporation with its principal

business address at 202 Tribble Gap Rd., Suite 300, Cumming, GA 30040. Studebaker may be served through its registered agent, M. Boyd Jones, 639 Whitlock Avenue, Marietta, GA, 30064.

14.    Upon information and belief, the sole members of Studebaker are Tom Marx and Johann Marx.

15.    Upon information and belief, both Tom and Johann Marx are individuals who reside in and are citizens of the state of Georgia.

16.    Studebaker is a citizen of the state of Georgia.

17.    Glenn Hill is an individual who resides in and is a citizen of Georgia. Mr. Hill may be served with process at 24 Discover Way, Cleveland, GA, 30528.

18.    Mr. Hill is the Chief Executive Officer of Studebaker.

19.    Studebaker is led and managed by its Chairman of the Board, General Wesley K. Clark (ret.), a well-known businessman who retired from the United States Army as a four-star general.

## JURISDICTION AND VENUE

20.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), because there is complete diversity of citizenship between Soluciones, a citizen of Mexico, on one side, and Studebaker and Mr. Hill, both

citizens of Georgia, on the other side, and the amount in controversy exceeds $75,000.

21.     Studebaker and Mr. Hill are both subject to personal jurisdiction in the Northern District of Georgia because they are both citizens of the state of Georgia.

22.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because both Studebaker and Mr. Hill are deemed to reside in this judicial district and a substantial part of the events and omissions giving rise to Soluciones' causes of action occurred in this judicial district, including formation of the contract, Studebaker's acceptance and retention of the subject funds, and the Parties' communications related thereto.

## FACTUAL ALLEGATIONS

### *Soluciones and Studebaker Enter into an Agreement for the Purchase and Sale of Face Masks*

23.     Soluciones is a distributor and retailer of a wide range of commercial products, including cleaning and household supplies.

24.     With the rise—and continued progression—of the COVID-19 pandemic, many of Soluciones' customers in Mexico required personal protective equipment ("PPE"), including face masks, in order to protect against the contamination and spread of disease.

25.     As a result, Soluciones sought a distributor of PPE that had capacity to sell and ship large quantities of face masks to Mexico.

26.     On or around May 25, 2020, Soluciones was introduced to Studebaker by Studebaker's agent and representative, Corporación Europea Para el Desarrollo Internacional S.A. de C.V. ("CEPDI").

27.     Studebaker provides, among other things, operational and support services to private companies in challenging environments and, at all times relevant to this action, held itself out to be a legitimate supplier and wholesaler of PPE. Studebaker claimed to have the ability to sell and ship large quantities of face masks from established manufacturers such as 3M and Honeywell.

28.     The Parties agreed that Studebaker would supply, and Soluciones would purchase, 300,000 N95, model 1860 face masks, manufactured by 3M (the "Masks") for the purchase price of $1,512,000.00 USD (the "Purchase Price").

29.     Thereafter, Studebaker drafted a Sale and Purchase Agreement, memorializing the Parties' agreement wherein Studebaker agreed to sell 300,000 Masks to Soluciones for $1,512,000 USD (the "Agreement"). A true and correct copy of the Agreement is attached hereto as **Exhibit 1** and incorporated herein by reference.

6

30.     Studebaker sent the Agreement to Soluciones.

31.     On or about June 9, 2020, Jose Pablo Salgado, as the President of Soluciones, signed the Agreement on behalf of Soluciones, and returned it to Studebaker.

32.     The Agreement establishes all material terms, including quantity, price, and time and place of delivery of the Masks—that is: 300,000 Masks (*see* Agreement, Ex. A, at § 1), purchased for $1,512,000.00 USD (*id*. at § 2.1.1), to be delivered to the Ex Works 3M Factory in Mexico (*id*. at § 3.1), within 10 to 14 days after Studebaker's receipt of the Purchase Price (*id*. at § 3.3).

33.     The Agreement also provides that, in the event the Masks are not delivered "within 24 hours, after the 14 days" set forth in Section 3.3, Studebaker "will be penalized with 1% of the operation." *Id.* at § 3.4.

34.     The Agreement also details the Parties' obligations upon breach by either party: the non-breaching party is to give written notice to the breaching party, who has 7 days to cure the breach. *Id.* at § 5.1.

35.     The Agreement specifies that formal notice is to be sent by e-mail communication (*id*. at §§ 6.1 and 6.3.1), and notice is deemed effective 24 hours after transmission (*id*. at § 6.4.1).

7

36.     If the breaching party fails to cure within the 7-day period, the Agreement provides that "the aggrieved party shall be entitled to cancel this Agreement . . . without prejudice to such party's other rights in law." *Id*. at § 5.1.

37.     The Agreement provides that if a Party is required to take steps to enforce its rights under the Agreement, that Party is entitled to "[a]ll costs, charges and expenses of every nature whatever, . . . including without limiting the generality of the foregoing, legal costs . . . ." *Id.* at § 12.2.

### *Soluciones Fulfills its Obligations Under the Agreement*

38.     In recognition of the Parties' Agreement, on or about June 11, 2020, Studebaker issued Invoice No. 1313 (the "Invoice"), which stated that the "deposit now due"—in exchange for 300,000 "3M Health Care Particulate Respirator and Surgical Masks, Model 1860, N95"—was $1,512,000.00. A true and correct copy of the Invoice is attached hereto as **Exhibit 2** and incorporated herein by reference.

39.     On or about June 12, 2020, Soluciones fully performed its obligations under the Agreement and wired the entire Purchase Price to Studebaker.  A true and correct copy of the bank's confirmation of transfer to Studebaker is attached hereto as **Exhibit 3** and incorporated herein by reference.

40.     On or about June 16, 2020, Studebaker's Chief Financial Officer, Jan

8

Griesel, confirmed receipt of Soluciones' payment by e-mail stating: "We wish to advise that we have received payment of our invoice for these masks and will be in communication with further details."

41.    Upon information and belief, Jan Grisel was a member of Studebaker's Board of Directors at this time.

42.    Soluciones' wire of the Purchase Price should have been received by Studebaker immediately upon transfer, making delivery of the Masks due no later than June 26, 2020.

43.    At the very latest, by June 16, 2020, Studebaker had received payment from Soluciones, making delivery of the Masks due no later than June 30, 2020.

### Studebaker Fails to Timely Deliver the Masks and Fails to Cure

44.    By June 30, 2020, Soluciones had not receive the Masks from Studebaker as required under the Agreement.

45.    On or about July 17, 2020, Mr. Salgado—on behalf of Soluciones—emailed Mr. Hill—on behalf of Studebaker—to give Studebaker written notice of its breach and to ask Studebaker to cure the breach within 7 days, as set forth in the Agreement.  A true and correct copy of the July 17, 2020 email is attached hereto as **Exhibit 4** and incorporated herein by reference.

46.     Soluciones further stated, among other things, that if the Masks were not delivered in the next 7 days (by July 24, 2020), Soluciones would "automatically cancel the [A]greement" and would expect a full refund of the Purchase Price, plus the 1% penalty detailed in the Agreement.

47.     Studebaker never responded to Soluciones' July 17th email, nor did Studebaker cure its breach of the Agreement within 7 days.

48.     Having heard nothing from Studebaker in response to his notification of breach, on or about August 10, 2020, Mr. Salgado, on behalf of Soluciones, sent an e-mail to Studebaker's agent, CEPDI, and copied Mr. Hill. In his email, Mr. Salgado again provided written notice of Studebaker's breach of the Agreement and again demanded a refund of the Purchase Price.  A true and correct copy of the August 10, 2020 e-mail, including its attachments, is attached hereto as **Exhibit 5** and incorporated herein by reference.

49.     On August 10, 2020, Mr. Salgado sent a letter to Mr. Hill and again requested that Studebaker refund the Purchase Price and cancel the Mask order, given that Studebaker was not able to timely fulfill the purchase order, point to any evidence that the order was in process by the manufacturer, or otherwise provide a reasonable delivery date. A true and correct copy of the August 10, 2020 letter is

attached hereto as **Exhibit 6** and incorporated herein by reference.

50.     To date, Studebaker has failed to refund the Purchase Price, despite Soluciones' repeated requests.

### Studebaker Acts Dishonestly and in Bad Faith in Order to String Soluciones Along and Avoid Refunding the Purchase Price

51.     Studebaker did not respond to Soluciones' communications by email or letter.  As a result, Mr. Salgado, on behalf of Soluciones, began communicating with Mr. Hill, on behalf of Studebaker, via WhatsApp Chat messenger in a continued attempt to resolve the breach or otherwise obtain a refund of the Purchase Price.

52.     Initially, Mr. Hill appeared helpful and indicated he was working to obtain an "estimated week of arrival" for the Masks. Alternatively, he said he would determine "what the process would be to cancel" the Agreement.

53.     In addition, Mr. Hill reassured Mr. Salgado that his concerns were "important" and that Mr. Hill understood that the Mask order was "a major project and a lot of money on [Soluciones'] side." Mr. Hill further assured Mr. Salgado that he took things "very seriously."

54.     Yet, by November 11, 2020, Studebaker still was not able to provide a delivery date and had not refunded Soluciones' money.

55.    Mr. Salgado continued to request updates from Mr. Hill, who employed various delay tactics in order to lead Soluciones on and keep Mr. Salgado engaged.

56.    From the period of August 2020 through August 2022, Mr. Hill frequently cited scheduling conflicts, family emergencies, business trips abroad, technology issues, time zone differences, multiple illnesses, death of Studebaker company executives, weather events, holiday delays, and claims that Studebaker had "more pressing matters"—among many others—in an effort to obfuscate the true facts surrounding the Mask order and avoid processing Soluciones' refund.

57.    When Mr. Hill was not making excuses, he attempted to distract from Studebaker's breach by making vague promises concerning the Mask order, replacement deals for other PPE, or even offering lucrative "partnership opportunities" for Soluciones with manufacturers in Mexico that Mr. Hill represented Studebaker could facilitate, so long as Soluciones did not cancel the Mask order.

58.    In particular, Mr. Hill, on behalf of Studebaker, repeatedly made false representations—via WhatsApp Chat messenger—concerning when Studebaker would deliver the Masks, including but not limited to the following examples:

    i.    On October 29, 2020: "based on my conversations and meetings

yesterday with our executive team, I can say your orders will be released next Wednesday [November 4, 2020]."

ii.  On November 5, 2020: "I spoke to logistics office just a little while ago and the product is on the way to our Georgia warehouse.  I'm thinking you will probably see this around Monday [November 9, 2020] midday."

iii.  On November 12, 2020: "[the Masks] are basically just in process at customs."

iv.  On November 19, 2020: "Distributor confirmed customs inspections is completed and they are just awaiting documents to forward."

v.  On December 8, 2020: "no one [at customs] is blocking [the Masks] at the moment."

vi.  On December 12, 2020: "I am told we are on track to close this order as requested before the holiday week starts.  It will be a good Christmas present to have this off all of our shoulders."

vii.  On January 21, 2021: "Studebaker's compliance team finished payment expectations and then [Studebaker will have] a call with

13

channel sales at 3M immediately after.  This should bring the
final conclusion to this."

viii.     On March 12, 2021: "we have support of the Mexico [3M] team
now so I feel it's a matter of time before this is resolved."

ix.     On March 24, 2021: "The response I have so far from the team
is about 500k [Masks] coming in for us we will be sending to
Mexico. . . 300k [Masks] will be coming your way and then off
to new client."

x.     On April 9, 2021: "It looks like we will have product to Mexico
City on next Friday [April] the 16th through our medical leader
health team.  Once we receive the tracking on this, I've asked to
share with me so I can coordinate with you on delivery to your
facility."

59.     Upon information and belief, Mr. Hill, on behalf of Studebaker, knew
these representations—set forth in Paragraph 58—were false at the time they were
made but made them anyway, in a calculated effort to string Soluciones along and
discourage Soluciones from otherwise enforcing its rights under the Agreement.

60.     With respect to Soluciones' requested refund, Mr. Hill repeatedly

14

offered false assurances—via WhatsApp Chat messenger—concerning Studebaker's intent and ability to return the full Purchase Price to Soluciones, including but not limited to the following examples:

i. On June 3, 2021: "I spoke to my legal department this morning and they are actively working on the strategy for this contract to close and return your funds. . . you have my word we will not leave you in a bad spot, just a little complex strategy at work for us."

ii. On July 27, 2021: "Just awaiting a call from finance now on the expected refund."

iii. On August 10, 2021: "The real problem is solved just letting the attorney sort out the brokers on all sides. I am personally aware this is almost done."

iv. On August 17, 2021: "Your 'huge' problem is [a] priority. I know that the documents from our legal team were submitted last week. I won't rest until it's resolved."

v. On November 17, 2021: "I've wanted to settle this but was really hoping you wanted to do the partnership in the USA and Mexico

with our manufacturing arm."

> vi.    On January 13, 2022: "I am actually sitting in my legal department now so I will discuss high level options [for the refund]."

61.    Upon information and belief, Mr. Hill, on behalf of Studebaker, knew these representations—set forth in Paragraph 60— were false at the time they were made but made them anyway, in a calculated effort to string Soluciones along and discourage Soluciones from otherwise enforcing its rights under the Agreement.

62.    Upon information and belief, this is because—at the same time that Soluciones was demanding a refund—other customers were also demanding refunds from Studebaker (for similar breaches of supply agreements) and Studebaker had also fallen behind on payments to certain manufacturers. *See*, *e.g.*, *Honeywell Safety Products USA, Inc., v. Studebaker Defense Group, LLC*, Case No. 1:21-cv-07487 (S.D.N.Y. 2021); *TBS Business Solutions USA Inc., v. Studebaker Defense Group, LLC, Glenn Hill*, Case No. 5:22-cv-00758 (C.D. Cal. 2022); *Springfield Clinic, LLP v. Primex Clinical Laboratories, Inc.*, Case No. 2:21-cv-03595-RSWL-AS (C.D. Cal. 2022).  Thus, on information and belief, Studebaker did not have the capacity to refund Soluciones' Purchase Price but needed to resolve its financial problems.

63.     Importantly, at no point during these discussion from July 2020 to August 2022, did Studebaker or Mr. Hill ever deny the existence or enforceability of the Agreement; nor did Studebaker deny that it had breached the Agreement.

64.      Instead, Mr. Hill acknowledged the failed shipment of the Masks. Mr. Hill repeatedly reassured Mr. Salgado that Soluciones' costs would be covered. Mr. Hill further acknowledged that a refund was necessary because the Masks were no longer of value to Soluciones, given the delay.

65.     Weeks and months passed, and Studebaker never refunded the Purchase Price to Soluciones.

66.     In a continued good faith attempt to resolve the subject dispute, on or about November 24, 2021, Soluciones, through local Mexican counsel, issued a formal demand letter to Studebaker. Soluciones demanded that Studebaker refund the Purchase Price and stated that it was "open to find[ing] a friendly solution" to the matter. A true and correct copy of the November 24, 2021 letter is attached hereto as **Exhibit 7** and incorporated herein by reference.

67.     Studebaker never responded to the November 24th letter.

68.     In a final attempt to reasonably resolve this dispute without resorting to litigation, on or about November 21, 2022, the undersigned counsel sent a demand

17

letter to Studebaker requesting a refund of the Purchase Price.  A true and correct copy of the November 24, 2022 letter is attached hereto as **Exhibit 8** and incorporated herein by reference.  As of this filing, Studebaker has not responded to the demand letter and has not refunded the Purchase Price to Soluciones.

69.     Because Studebaker continues to improperly withhold monies that rightfully belong to Soluciones, Soluciones must expend additional time and resources and file this lawsuit against Studebaker in order to seek redress for the harm caused by Studebaker's actions.

70.     As a result of Studebaker's breach, misconduct, misrepresentations, and fraud, Soluciones has been deprived of the use and investment of its money (and without the goods it paid for) and has suffered other consequential damages, including but not limited to lost business opportunities and the loss of goodwill with its customers, in an amount to be proven at trial.

## CAUSES OF ACTION

### COUNT I: BREACH OF CONTRACT
### (Against Defendant Studebaker)

71.     Soluciones reasserts and realleges each and every paragraph set forth in this Complaint as if fully set forth herein.

72.     On or about June 9, 2020, Soluciones and Studebaker entered into a

18

valid and enforceable Agreement, pursuant to which Studebaker agreed to sell and Soluciones agreed to purchase 300,000 N95 Masks at the Purchase Price of $1,512,000 USD.

73.    Soluciones performed each and every one of its obligations under the Agreement, namely by wiring $1,512,000 from its bank to Studebaker's designated bank account. Studebaker's CFO, Ms. Griesel, confirmed receipt of these funds on June 16, 2020.

74.    Studebaker materially breached its obligations under the Agreement by willfully and intentionally failing, delaying, and/or otherwise refusing to ship the Masks to Soluciones, despite receiving the full Purchase Price for the Masks from Soluciones.

75.    Soluciones gave Studebaker written notice of its breach via email, as required under the Agreement, and Studebaker failed to cure the breach within the 7-day period. Thereafter, Studebaker continued to fail to supply the Masks to Soluciones within a commercially reasonable time.

76.    As a direct and proximate result of Studebaker's breach of the Agreement, Soluciones has been damaged in an amount to be proven at trial, in an amount not less than $1,512,000 plus 1% of the Purchase Price.

77.    Further, as a direct and proximate result of Studebaker's breach of the Agreement, Soluciones suffered consequential damages including but not limited to lost profits in an amount not less than the fair market value of the Masks at the time of Studebaker's breach and the loss of business opportunities and goodwill of its customers, in an amount to be proven at trial.

## COUNT II: BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING
### (Against Defendant Studebaker)

78.    Soluciones reasserts and realleges each and every paragraph set forth in this Complaint as if fully set forth herein.

79.    As detailed above, on or about June 9, 2020, Soluciones and Studebaker entered into the Agreement.

80.    An implied covenant of good faith and fair dealing exists in every contract, including the Agreement at issue in this case.

81.    The doctrine exists to effectuate the Parties' intentions and honor their reasonable expectations, and requires the parties to perform, in good faith, the obligations imposed by their Agreement.

82.    Pursuant to the implied covenant of good faith and fair dealing, each party must exercise its best efforts to perform under the Agreement, and to not hinder

the other party's performance, frustrate the purposes of the Agreement, or deny the other party the benefits of the Agreement.

83.     Here, Studebaker failed to use its best efforts to perform under the Agreement when it failed to timely deliver the Masks and, thereafter, failed to communicate with Soluciones regarding its plan to cure the breach or otherwise provide updated information.

84.     Further, Studebaker frustrated—and continues to frustrate—the very purpose of the Agreement by refusing to return the Purchase Price to Soluciones after it failed to timely deliver the Masks.

85.     Studebaker has denied Soluciones the benefit of the Agreement because it failed to timely deliver the Masks as per the Agreement and, thereafter, failed to refund the Purchase Price to Soluciones.

86.     As a direct and proximate result of Studebaker's breach of the implied covenant of good faith and fair dealing, Soluciones has been damaged in an amount to be proven at trial, not less than $1,512,000 plus 1% of the Purchase Price.

## COUNT III: UNJUST ENRICHMENT
### (AS AN ALTERNATIVE TO COUNTS I AND II)
### (Against Defendant Studebaker)

87.     Soluciones reasserts and realleges each and every paragraph set forth in

this Complaint as if fully set forth herein.

88.    Soluciones pleads Count III in the alternative to Counts I and II, in the event the Court or the jury determines that the Parties lacked an express written Agreement pertaining to the Masks and Purchase Price.

89.    Soluciones paid the sum of $1,512,000 to Studebaker in June 2020 for a total of 300,000 Masks, as per the Parties' Agreement.

90.    To date, Studebaker has not delivered *any* Masks to Soluciones and has not furnished a commercially reasonable explanation for its failure.

91.    Soluciones has demanded a refund on several occasions, but Studebaker has failed and wrongfully refused to provide such refund.

92.    Studebaker's retention of Soluciones' property is unjust.

93.    Therefore, Studebaker has been unjustly enriched at the expense of Soluciones in the amount of at least $1,512,000.

94.    As a direct and proximate result of Studebaker's conduct, Soluciones has been damaged and is entitled to restitution of an amount not less than $1,512,000.

## COUNT IV: FRAUDULENT MISREPRESENTATION
## (AS AN ALTERNATIVE TO COUNTS I AND II)
### (Against Defendant Studebaker)

95.     Soluciones reasserts and realleges each and every paragraph set forth in this Complaint as if fully set forth herein.

96.     Soluciones pleads Count IV in the alternative to Counts I and II, in the event the Court or the jury determines that the Parties lacked an express written Agreement pertaining to the Masks and Purchase Price.

97.     On or around May 25, 2020, Mr. Hill—on behalf of Studebaker—made false and misleading statements to Mr. Salgado—on behalf of Soluciones—as to Studebaker's ability and intent to sell and ship large quantities of face masks from established manufacturers such as 3M and Honeywell.

98.     On or around May 25, 2020, Mr. Hill—on behalf of Studebaker—also made false and misleading statements to Mr. Salgado—on behalf of Soluciones— that Studebaker could and would deliver the Masks to Soluciones, in Mexico, within 10 to 14 days of receiving the Purchase Price.

99.     Studebaker knew that the representations made to Soluciones were false and misleading when it made them or, at a minimum, it made the representations recklessly and without regard for their truth—in part because

23

Studebaker knew it did not have an established contract with either 3M or Honeywell providing for such supply or delivery terms.

100.   In making these false and misleading representations to Soluciones, Studebaker intended to induce Soluciones to wire the Purchase Price to Studebaker.

101.   Soluciones did rely on the representations by Mr. Hill and Studebaker and, on June 12, 2020, wired the Purchase Price to Studebaker with the full expectation that Studebaker would deliver the Masks, as represented by Mr. Hill.

102.   Soluciones' reliance on Mr. Hill's representations was reasonable and justifiable, given that Mr. Hill is Studebaker's CEO, Studebaker is led by a well-known and decorated Army veteran and businessman (General Wes Clark), and Studebaker appeared to have significant operations and logistics experience, including internationally.

103.   After Soluciones wired the Purchase Price to Studebaker, Studebaker failed to deliver the Masks to Soluciones as promised.

104.   But for Studebaker's representations, Soluciones would have acted differently, namely by not wiring the Purchase Price to Studebaker.

105. As a direct and proximate result of Studebaker's fraudulent misrepresentations, Soluciones has suffered damages in an amount to be proven at

trial, in an amount not less than $1,512,000.

106.   Further, as a direct and proximate result of Studebaker's fraudulent misrepresentations, Soluciones suffered consequential damages including but not limited to lost profits in an amount not less than the fair market value of the Masks at the time of Studebaker's breach and the loss of business opportunities and goodwill of its customers, in an amount to be proven at trial.

### COUNT V: NEGLIGENT MISREPRESENTATION
### (AS AN ALTERNATIVE TO COUNTS I AND II)
### (Against Defendant Studebaker)

107.   Soluciones reasserts and realleges each and every paragraph set forth in this Complaint as if fully set forth herein.

108.   Soluciones pleads Count V in the alternative to Counts I and II, in the event the Court or the jury determines that the Parties lacked an express written Agreement pertaining to the Masks and Purchase Price.

109.   Studebaker made numerous representations as described above, including the statement in Paragraphs 97 and 98.

110.    Studebaker's representations were false and misleading as described above.

111.   Studebaker had no reasonable grounds to believe that such

representations were true when it made them, in part because Studebaker knew it did not have any established contract with either 3M or Honeywell providing for the supply or delivery specifications that Studebaker had represented to Soluciones.

112.   Studebaker intended that Soluciones rely on its misrepresentation and intended to induce Soluciones to wire the Purchase Price to Studebaker.

113.   Studebaker did rely on the representations by Mr. Hill and Studebaker and, on June 12, 2020, wired the Purchase Price to Studebaker with the full expectation that Studebaker would deliver the Masks, as represented by Mr. Hill.

114.   Soluciones' reliance on Mr. Hill's representations was reasonable and justifiable, given that Mr. Hill is Studebaker's CEO, Studebaker is led by a well-known and decorated Army veteran and businessman (General Wes Clark), and Studebaker appeared to have significant operations and logistics experience, including internationally.

115. But for Studebaker's representations, Soluciones would have conducted itself differently as described above, namely by not wiring the Purchase Price to Studebaker.

116. As a direct and proximate result of Studebaker's negligent misrepresentations, Soluciones has suffered damages in an amount to be proven at

trial, in an amount not less than $1,512,000.

117.   Further, as a direct and proximate result of Studebaker's negligent misrepresentations, Soluciones suffered consequential damages including but not limited to lost profits in an amount not less than the fair market value of the Masks at the time of Studebaker's breach and the loss of business opportunities and goodwill of its customers, in an amount to be proven at trial.

## COUNT VI: CONVERSION
### (Against Defendant Studebaker)

118.   Soluciones reasserts and realleges each and every paragraph set forth in this Complaint as if fully set forth herein.

119.   Studebaker substantially interfered with and converted Soluciones' property by, among other things, taking payment of the $1,512,000 Purchase Price for the Masks, and failing to deliver the Masks to Soluciones.

120.   Upon Studebaker's failure to deliver the Masks and failure to cure its breach, Soluciones demanded a refund of the Purchase Price; at that time, Studebaker knew that it had no further right to withhold Soluciones' money.

121.   Yet, Studebaker has failed and refused to refund the Purchase Price to Soluciones.

122.   Therefore, Studebaker improperly withheld Soluciones' assets after it

had no further right, title, license, or interest in that money.

123.   Studebaker has even acknowledged that it is obligated to refund the Purchase Price to Soluciones, but it has not yet done so.

124.   As a result of Studebaker's conduct, Soluciones suffered damages in an amount to be proven at trial.

## COUNT VII: FRAUD
### (Against Defendants Studebaker and Hill)

125.   Soluciones reasserts and realleges each and every paragraph set forth in this Complaint as if fully set forth herein.

126.   Studebaker made numerous fraudulent misrepresentations in order to convince Soluciones that the Masks were going to be delivered or, alternatively, that Studebaker would issue a refund. In doing so, Studebaker intended to discourage Soluciones from initiating a legal proceeding or otherwise seeking to enforce its rights under the Agreement.

127.    Studebaker's representations were false, misleading, and made in bad faith.  Examples of Studebaker's misrepresentations are set forth above in ¶¶ 58 and 60.

128.   Studebaker knew that the representations made to Soluciones were

28

false and misleading when it made them or, at a minimum, it made the representations recklessly and without regard for their truth.

129.   Studebaker intended for Soluciones to rely upon their misrepresentations and intended to lead Soluciones to believe that Studebaker would either promptly deliver the Masks or refund the Purchase Price.

130.   Given Studebaker's reputation, including the leadership of General Clark, Soluciones reasonably relied on Studebaker's representations—most of which were made by Glenn Hill, as Studebaker's CEO—and did not initiate this action until now.

131.   As a result, Soluciones suffered damages, including the loss of business opportunities and goodwill of customers, due in part to its inability to use the $1.5 million that Studebaker wrongfully possesses, in an amount to be proven at trial.

## COUNT VIII: NEGLIGENT MISREPRESENTATION
### (Against Defendants Studebaker and Hill)

132.   Soluciones reasserts and realleges each and every paragraph set forth in this Complaint as if fully set forth herein.

133.   Studebaker made numerous representations as described above, including the statements set forth in ¶¶ 58 and 60.

134.   Studebaker's representations were false and misleading as described above.

135.   Studebaker had no reasonable grounds to believe that such representations were true when it made them.

136.   Studebaker intended for Soluciones to rely upon their misrepresentations and intended to lead Soluciones to believe that Studebaker would either promptly deliver the Masks or refund the Purchase Price.

137.   Given Studebaker's reputation, including the leadership of General Clark, Soluciones reasonably relied on Studebaker's representations—most of which were made by Glenn Hill, as Studebaker's CEO—and did not initiate this action until now.

138.   But for Studebaker's representations, Soluciones would have conducted itself differently as described above, including by initiating this lawsuit earlier.

139.   As a result, Soluciones suffered damages, including the loss of business opportunities and goodwill of customers, due in part to its inability to use the $1.5 million that Studebaker wrongfully possesses, in an amount to be proven at trial.

## COUNT IX: ATTORNEY'S FEES
### (Against Defendants Studebaker and Hill)

140.   Soluciones reasserts and realleges each and every paragraph set forth in this Complaint as if fully set forth herein.

141.   Under provision 12.2 of the Agreement, legal costs incurred in enforcing a party's contractual rights are recoverable from the party against which the rights are successfully enforced.   Therefore, pursuant to the terms of the Agreement, Soluciones is entitled to its attorney's fees associated with bringing this action.

142.   Additionally, Studebaker and Mr. Hill have acted in bad faith, have been stubbornly litigious, and/or have caused Soluciones unnecessary trouble and expense.   Therefore, pursuant to O.C.G.A. §13-6-11, Soluciones is entitled to recover attorney's fees and costs it has incurred and will incur in this action.

143.   Accordingly, Soluciones seeks to recover its contractual and/or statutory attorneys' fees, in an amount to be proven at trial.

## COUNT X: PUNITIVE DAMAGES
### (Against Defendants Studebaker and Hill)

144.   Soluciones reasserts and realleges each and every paragraph set forth in this Complaint as if fully set forth herein.

31

145.   As further detailed herein, the actions of Studebaker and Mr. Hill in this case show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which raises the presumption of conscious indifference to consequences.

146.   Accordingly, Soluciones is entitled to an award of punitive damages for which it specifically prays, pursuant to O.C.G.A. § 51-12-5.1(d)(1).

147.   Soluciones is entitled to and prays for an award of punitive damages in the amount of not less than $250,000.00.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure Rule 38(b), Soluciones demands a trial by jury of all issues triable herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Soluciones demands judgment against Studebaker and Mr. Hill, and Soluciones requests compensatory damages, together with interest, cost of suit, attorneys' fees, and all such other relief as the Court deems just and proper as well as:

1.   Compensatory damages to Soluciones for an amount to be proven at trial not less than $1,512,000;

2.   Consequential damages in an amount to be proven at trial;

32

3. Restitution and disgorgement of profits;

4. Exemplary and punitive damages in an amount to be proven at trial;

5. Reasonable attorneys' fees, including those available under O.C.G.A. § 13-6-11;

6. The costs of these proceedings;

7. All other ascertainable economic damages;

8. Pre-judgment and post-judgment interest;

9. Such other and further relief as this Court deems just and proper.

DATED: December 15, 2022    MCGUIREWOODS LLP

By: /s/ Cheryl L. Haas
    Cheryl L. Haas
    Georgia Bar No. 316081
    M. Laughlin Allen
    Georgia Bar No. 901999
    1230 Peachtree Street NE, Suite 2100
    Atlanta, Georgia 30309
    Tel: (404) 443-5500
    Fax: (404) 443-5599
    chaas@mcguirewoods.com
    mlallen@mcguirewoods.com

    *Attorneys for Plaintiff Soluciones en Bastones S.A. de C.V.*

167441091_10

33